IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARY PATTERSON, Individually, and
TRAVIS PATTERSON, Individually,

Plaintiffs,

vs.                                        Case No. 12 CV 1308-JAR-KGG

CITY OF WICHITA, KANSAS,
And OFFICER J. HENRY,

Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Defendants City of Wichita, Kansas, and Officer Jared Henry submit the following memorandum in support of their motion for partial summary judgment.

## NATURE OF THE CASE

Wichita police officers responded to a call about two brothers fighting. Officers found five people at the scene: brothers Travis Patterson and Antron Cox, who was wanted on a felony warrant; Mary Patterson, Travis and Antron's mother; Audrey Martinez, Travis' girlfriend; and Shannon Phares, Antron's girlfriend. When Antron and Shannon moved toward a van to drive away, officers pulled Antron from the vehicle and subdued him on the ground. Mary, Audrey and Shannon stood nearby and yelled at officers to let Antron go. Mary did not respond to officers' commands to get back. Officer Jared Henry pushed Mary back away from Antron. Mary hit Officer Henry's arm. Officer Henry brought Mary to the ground. Travis observed this and ran toward Mary and Officer Henry. Officer Casey Wills stepped in front of Travis and pushed him to redirect him.

Travis pushed back and swung his right arm at Officer Wills. Officer Henry, fearing for Officer Wills' safety, tased Travis in the back. Later, at the police station, when Travis saw Mary he became upset and struggled with officers. Travis was physically subdued and handcuffed.

Mary and Travis filed the instant suit against the City of Wichita and Officer Henry. Mary brought Section 1983 claims for excessive force, false arrest and malicious prosecution. Travis brought Section 1983 claims for excessive force and failure to train. Both plaintiffs raised state law claims for negligent use of force and negligent ("NIED") and intentional infliction of emotional distress ("IIED"). Plaintiffs have abandoned the failure to train claim and the NIED claims.

Plaintiffs' excessive force claims have no merit, but they are not addressed in this motion for partial summary judgment. Mary's false arrest claim is likewise without merit but is not addressed here. Defendants seek summary judgment on Mary's Section 1983 malicious prosecution claim, and both plaintiffs' state law claims for negligent use of force and IIED. These claims fail as a matter of law and should be dismissed.

### ISSUES ON PARTIAL SUMMARY JUDGMENT

**I.**      **Mary Patterson's Section 1983 malicious prosecution claim fails.**

**II.**     **Both plaintiffs' state law claims for negligent use of force fail.**

**III.**    **Both plaintiffs' state law claims for intentional infliction of emotional distress fail.**

**IV.**     **The City of Wichita cannot be held liable for plaintiffs' federal claims.**

## STATEMENT OF UNCONTROVERTED FACTS

Defendants submit the following statement of uncontroverted facts for the purpose of testing the legal sufficiency of plaintiffs' claims and evidence.  As noted below, defendants' version of the facts does not match plaintiffs' version in some instances. But consistent with the requirements of a motion for summary judgment, the facts herein are based upon the evidence viewed in the light most favorable to the non-moving parties, the plaintiffs. Defendants reserve the right to controvert these facts should trial be necessary.

1. Travis Patterson and Antron Cox are brothers. Mary Patterson is their mother. (Mary, 11:23-24, 12:19-22)[1]

2. Mary Patterson lives at 2016 Random Road in Wichita. (Mary, 7:5-6)

3. On June 6, 2010, Travis lived with Mary, along with Travis' girlfriend Audrey Martinez and Travis and Audrey's two small children. (Mary, 11:18 to 12:5)

4. On June 6, 2010, sometime after midnight, Travis and Antron were "cussing and wrestling" with each other in the front yard of Mary's home. (Mary, 21:10 to 24:4; Martinez, 42:11-15)[2]

5. The two had been out to a bar earlier in the evening and had consumed alcohol. Travis said he and Antron had two and a half drinks apiece. (Mary, 69:20 to 70:1; Travis, 13:24 to 15:14)[3]

6. Mary heard them from inside the house and went outside to see what was happening. (Mary, 24:11-16)

---

[1] Excerpts from the deposition of Mary Patterson are attached as Exhibit 1.
[2] Excerpts from the deposition of Audrey Martinez are attached as Exhibit 2.
[3] Excerpts from the deposition of Travis Patterson are attached as Exhibit 3.

7. Mary tried to physically separate the men but was unable to do so. Mary observed that Travis had blood on his lip. (Mary, 28:13-20, 29:2-10)

8. Mary told them to stop or she would call the police. They did not stop so Mary told Audrey, who had come outside, to call the police. (Mary, 30:6-18, 31:2-16)

9. At that time, Mary was aware that there was a felony warrant for Antron's arrest. He was wanted on a rape charge. (Mary, 156:9 to 157:5; Travis, 102:3-12)

10. Audrey called 911. She said her boyfriend and his brother were fighting and they needed officers to assist. She said one of the men was wounded but did not need an ambulance. (Martinez, 30:10-19, 35:19 to 36:13)

11. Antron's girlfriend, Shannon Phares, drove to Mary's home from a night club. She passed two parked police cars up the street from Mary's house. Two police officers were outside the cars talking. Phares drove by the officers and parked across the street from Mary's home. (Phares, 6:1-16, 10:14-17, 11:8 to 13:2)[4]

12. Phares got out of her vehicle and walked toward Travis and Antron, who were arguing. She asked what was going on, and she told Travis and Antron that there were police cars parked up the street. (Phares, 6:1-16, 13:6-10, 14:5-15)

13. Shannon and Antron walked to Shannon's van and got in to leave. (Phares, 14:16 to 15:6)

14. Several uniformed police officers arrived – some in cars, some on foot - coming around the street corner from the south. According to Mary, they were shining flashlights and shouting "Shut the fuck up. Get the fuck back. Get the fuck back." (Mary, 43:10 to 44:10, 51:2-15)

---

[4] Excerpts from the deposition of Shannon Phares are attached as Exhibit 4.

15. Mary saw several police officers pull Antron away from the van and throw him to the ground, then they sat on him. (Mary, 45:20-22, 47:3-7, 48:13-20)

16. Phares got out and stood at the back of the van. Mary joined Phares at the rear of the van where she could see Antron. Audrey was there as well. (Phares 16:6-8, 19:25 to 20:8; Martinez, 49:18 to 51:13, Martinez Exhibit 39; Travis, 51:3-12)[5]

17. Mary testified that she was "furious" and was "hollering at the officers to get off him [Antron], let him breathe." (Mary, 49:19 to 50:4)

18. Mary said that an officer shined a flashlight in her face and told her to "[g]et the fuck back." (Mary, 52:23 to 54:17)

19. Mary said the next thing she knew, an officer (Officer Jared Henry) struck her in the throat and knocked her to the ground, laying on top of her. (Mary, 52:24, 62:13-17, 63:12-24).[6]

20. Travis said he saw a police officer "basically tackle" Mary and she landed on her left side. (Travis, 48:11-17, 50:23-24)

21. Travis testified that he went toward his mother. He can't remember whether he pulled the police officer off of her, but he does remember putting his hands up in the air and asking the officers why they were doing this to Mary. (Travis, 52:8-20; Mary, 64:22 to 65:2, 66:4-7, 66:19 to 67:4)

---

[5] Martinez Exhibit 39 is attached as Exhibit 5.

[6] Defendants' evidence is that after Mary Patterson failed to heed warnings to move back, Officer Henry placed his hand against her upper chest to move her back, she slapped his hand away, he arrested her and lowered her to the ground to control her and overcome her resistance to handcuffing. Although these events are disputed in the evidence, even if Mary Patterson's testimony is credited as it must on a motion for summary judgment, the claims addressed in this motion fail.

22. Travis said the next thing he remembers is being tased twice in the back. (Travis, 52:17-20, 53:14-18, 62:10-11) Again, defendants' version of events is different but the differences are not material to this summary judgment motion.

23. Travis testified that he told an officer that he (Travis) had an associate's degree in criminal justice. The officer said Travis' degree "ain't like mine . . . because of where you live." (Travis, 55:7-19)

24. Travis was handcuffed and put in the back of the police car. (Travis, 62:17 to 64:9)

25. Mary was handcuffed and told to sit on the curb. (Mary, 78:2-23)

26. Mary testified that the duration of time from when the police arrived until she was handcuffed and sat on the curb was approximately 15 to 20 minutes. (Mary, 104:13-20)

27. Officer Henry took Mary to the police station. Mary testified that Officer Henry told her to shut up and quit crying. He also told another officer that Mary battered him. (Mary, 83:4 to 84:21)

28. Travis was taken to the police station. His handcuffs were removed. Later, Mary arrived at the station. Travis asked Mary if she was okay. The officer with Mary, Officer Henry, told him to shut up and turn around. (Travis, 72:5 to 73:9)

29. Travis replied that he had the right to ask his mother if she was okay. Officer Henry approached Travis, so Travis rose from his chair to a standing position. (Travis 73:10-14)

30. Several officers surrounded Travis. One pulled Travis' hands behind his back to handcuff him. (Travis, 73:17 to 74:4)

31. Travis testified that Officer Henry kneed him in the outer left thigh three times. Travis said he was placed up against a wall with his hands behind his back and Officer Henry grabbed his thumb and twisted it. (Travis, 74:7-17, 75:4-9)

32. Travis was charged with battery of a law enforcement officer (Officer Casey Wills) and resisting arrest. He was convicted of the first charge in municipal court. He was found not guilty of resisting arrest. (Travis, 80:3-16, 81:21 to 83:8, 88:21 to 89:19; Travis Deposition Exhibits 10, 11, 12; Pretrial Order, doc.#74, Stipulations ¶2(a)(3) and (4), p. 2)[7]

33. Travis appealed the conviction. During the appeal process, the battery charge was amended to obstructing legal process. Travis pled no contest to this charge and received fines and probation. (Travis, 78:13-21, 85:1-24, 88:17-25; Travis Deposition Exhibit 9, 12)

34. Mary was charged with battery of a law enforcement officer. She was booked and released on June 6, 2010. The booking process took about 45 minutes. She was still wearing her nightclothes. (Mary, 90:6-22, 91:19-21; Municipal Court Records, City of Wichita 213-15; Pretrial Order, doc.#74, Stipulations ¶2(a)(1), p. 2)[8]

35. Mary was arraigned on June 25, 2010. She was released on her own recognizance pending trial. (Municipal Court Records, City of Wichita 209)

36. Mary was provided a court-appointed defense attorney. She was found not guilty in municipal court on September 24, 2010. (Mary, 91:19-25, 92:5-8; Pretrial Order, doc.#74, Stipulations ¶2(a)(2), p. 2 )

---

[7] Travis Deposition Exhibits 9, 10, 11 and 12 are attached as Exhibit 6.
[8] Municipal Court Records, City of Wichita 209-215 are attached as Exhibit 7.

37. Mary testified that she was depressed and taking medication for her depression before the incident. (Mary, 85:11-22) Mary said after the incident she suffered nightmares and became more depressed. (Mary, 84:22-25, 85:22 to 86:11) She said her doctor increased her dose of depression medication. (Mary, 98:16-25)

38. Mary said she was paranoid and anxious before the incident, but it became worse after the incident. (Mary, 103:4-11)

39. Travis testified that he is embarrassed "in a way" when someone asks about the Taser marks on his back and he reveals he has been tased. (Travis, 93:1 to 94:16)

40. Mary and Travis filed suit in the instant case on June 5, 2012. (Petition, doc.#1-1)

## ARGUMENTS AND AUTHORITIES

### I.    Mary Patterson's Section 1983 malicious prosecution claim fails.

Mary was arrested for battery of a law enforcement officer on June 6, 2010. She was booked and released. She was provided court-appointed counsel. On September 24, 2010, she was found not guilty in municipal court. She claims defendants violated her Fourth Amendment rights by maliciously prosecuting her for a crime she did not commit.

Section 1983 provides a federal civil remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution" by any person acting under color of state law. 42 U.S.C. §1983. The analysis begins with the identification of the precise constitutional right allegedly infringed. *Graham v. Connor,* 490 U.S. 386, 394 (1989). The Fourth Amendment's right to be free from unreasonable seizure is the source of a claim of malicious prosecution. *Albright v. Oliver,* 510 U.S. 266, 273-74 (1994); *Taylor v. Meacham,* 82 F.3d 1556, 1561 (10th Cir. 1996). A plaintiff must "demonstrate a misuse of legal procedure so egregious as to subject the aggrieved person to a deprivation of 'constitutional dimension'" in order for the claim to succeed. *Williams v. Weber,*

905 F.Supp. 1502, 1511 (1995). More specifically, plaintiff must show that he or she was "seized" under the meaning of the Fourth Amendment. *Nielander v. Bd. of Cnty. Comm'rs,* 582 F.3d 1155, 1164–65 (10th Cir. 2009).

Once a plaintiff has established a violation of her constitutional rights, she must establish the remaining elements of a malicious prosecution claim: 1) the defendant caused the plaintiff's confinement or prosecution; 2) the action terminated in favor of the plaintiff; 3) there was no probable cause to support the arrest, confinement, or prosecution of the plaintiff; 4) the defendant acted with malice; and 5) damages. *McCarty v. Gilchrist,* 646 F.3d 1281, 1285 (10th Cir. 2011).

Mary's federal malicious prosecution claim fails because she cannot show a Fourth Amendment violation. A malicious prosecution claim requires proof of a significant restraint on liberty in the form of arrest and/or incarceration. *Becker v. Kroll,* 494 F.3d 904, 915-16 (10th Cir. 2007). Further, the restraint must occur as a result of the prosecution – the deprivation of liberty must arise "pursuant to the legal process." *Mitchell v. Victoria Holm,* 434 F.Supp.2d 219, 227 (S.D.N.Y. 2006), citing *Singer v. Fulton County Sheriff,* 63 F.3d 110, 116-17 (2nd Cir. 1995).

The essence of a malicious prosecution action is the perversion of proper legal procedures. A warrantless arrest which occurs prior to arraignment or charges filed with the court is not a deprivation of liberty sufficient to support a malicious prosecution claim because it was not "pursuant to legal process." *Singer,* 63 F. 3d at 117. "Generally, the offending legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)." *Nieves v. McSweeney,* 241 F.3d 46, 54 (1st Cir. 2001).

An arrest which occurs prior to institution of legal process may be actionable under the Fourth Amendment as a false arrest but not as a malicious prosecution. *Id.* Accord *Williams,* 905

F.Supp. at 1512 (individual arrested, processed, released and subsequently charged did not have a Fourth Amendment malicious prosecution claim). See also *Russoli v. Salisbury Tp.,* 126 F.Supp.2d 821, 853 (E.D.Pa. 2000); *Meehan v. Town of Plymouth,* 167 F.3d 85, 90 (1st Cir. 1999) (plaintiff "cannot base a malicious prosecution claim on [her] warrantless arrest, because it did not constitute legal process.").

Here, Mary was arrested without a warrant. She was booked and released the same night. She was arraigned and released on her own recognizance. The only "seizure" was Mary's warrantless arrest. She was never seized after the legal process against her commenced. To the extent Mary argues that she expended time and effort to respond to the criminal charges, these impositions are not enough to amount to a seizure under the Fourth Amendment. *Becker,* 494 F.3d at 915-16 (declining invitation to expand the notion of "seizure"). Mary cannot prove a Fourth Amendment violation as a matter of law.[9]

Other elements of the malicious prosecution claim are missing as well. While defendants believe there was probable cause to arrest and prosecute Mary for battery of a law enforcement officer, and defendants deny that Officer Henry acted with malice, these issues will not be raised on summary judgment, and need not be raised. Mary's malicious prosecution claim fails as a matter of law for lack of a Fourth Amendment violation.

## II.    Plaintiffs' state law claims for negligent use of force fail.

Mary and Travis both raise state law claims for negligent use of force. These are battery claims in disguise, and they are barred by the one-year statute of limitations. K.S.A. 60-514(b).

---

[9] For this reason Officer Henry is entitled to qualified immunity on the Section 1983 malicious prosecution claim. "Once a defendant invokes the defense of qualified immunity, the plaintiff must meet a two-part burden to avoid summary judgment: (1) that the defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct." *York v. City of Las Cruces,* 523 F.3d 1205, 1209 (10th Cir. 2008) (internal quotation marks omitted). But without a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

Kansas law does not recognize a claim for negligent use of force by a law enforcement officer in the course of an arrest. Even if such a negligence claim was available, it is barred by discretionary function immunity. See K.S.A. 75-6104(e).

**A. The negligent use of force claims are really battery claims in disguise, and they are time-barred.**

The state law claims for injuries caused by the use of force by Officer Henry are really claims for battery. Substance controls the nature of a cause of action, not the label plaintiffs place on it. "The law is clear in Kansas that the courts will look through form to substance in determining the true nature of a cause of action." *Taylor v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers,* 25 Kan. App. 2d 671, 678, 968 P.2d 685 (1998) (plaintiff cannot characterize a defamation claim as tortious interference with business advantage to avoid the statute of limitations for defamation). The court is not bound by plaintiffs' categorization of the claims in the complaint. "Instead, [t]he law of this state is realistic. Substance prevails over form." (Citations and internal quotations omitted.) *Baska v. Scherzer,* 283 Kan. 750, 756, 156 P.3d 617 (2007).

Mary and Travis each raise a claim labeled "negligent use of force," but the underlying factual allegations involve only the intentional application of force by Officer Henry in "tackling" Mary and in tasing Travis as well as kneeing him and twisting his thumb at the police station. (First Amended Complaint, doc.#10, ¶¶31, 49, 62-67; Pretrial Order, doc.#74, ¶4(a), pp. 9-10) These fact allegations form the basis for a battery claim, not negligence.

Battery is "the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive." PIK Civ.4th 127.02.[10] In contrast, the elements of negligence are: (1) duty; (2) breach; (3) a causal

---

[10] Kansas law affords a statutory privilege to law enforcement officers to use reasonable force in effecting an arrest and in defending themselves or another during an arrest. K.S.A. 21-5227(a). See also Restatement 2d Torts §132 (officer is privileged to use force reasonably believed necessary, but privilege does not extend to excessive force).

connection between the duty breached by defendant and plaintiff's injury; and (4) damages resulting from defendant's negligence. *Woodruff v. City of Ottawa,* 263 Kan. 557, 560-61, 951 P.2d 953 (1997). The difference between battery and negligence is intent - battery is intentional, while negligence is unintentional. *Murray v. Modoc State Bank,* 181 Kan. 642, 646, 313 P.2d 304 (1957).

There are no fact allegations in the complaint which suggest that Officer Henry acted unintentionally toward Mary or Travis. Mary claims Officer Henry "tackled" her and knocked her to the ground. Travis claims Officer Henry tased him in the back despite the fact that he posed no danger or offered any resistance. Travis claims Officer Henry unnecessarily struck him with his knee and twisted his thumb at the police station. These are all intentional acts. Neither Mary nor Travis allege facts suggesting that Officer Henry acted unintentionally. The essence of their claims for negligent use of force are claims for battery, and these are barred by the one-year statute of limitations. K.S.A. 60-514(b).

## B. Kansas law does not recognize plaintiffs' negligent use of force claim.

Kansas law does not recognize a claim for negligent use of force by a law enforcement officer in the course of arrest. This issue was most recently explored in *Price v. City of Wichita,* 2013 WL 6081103, *2 (D.Kan. 2013) (unpublished). There, the district court concluded that it could not grant defendants' motion to dismiss a negligent use of force claim. The court pieced together remnants of state and federal cases to determine that such a claim might exist under Kansas law. *Id.* at *2. Defendants respectfully disagree with the reasoning in *Price.*

When applying state law, the task of the federal court is "simply to ascertain and apply the state law." *Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 866 (10th Cir. 2003). The federal court "must defer to the most recent decisions of the state's highest court." *Id.* "A federal court must

follow the state's highest court in pronouncing or construing the state's common law, statutory law, or constitutional law." *TMJ Implants, Inc. v. Aetna, Inc.,* 498 F.3d 1175, 1181 (10th Cir. 2007).

*Baska* is the most recent decision by the Kansas Supreme Court addressing whether the intentional use of force can be pursued as a negligence claim. *Baska* did not involve use of force by a law enforcement officer. It addressed whether the plaintiff - who was unintentionally hit by a blow meant for another - had a claim of negligence or a claim of battery. Baska was not the intended recipient of the blow, but the blow was intentionally delivered. Baska asserted a negligence claim, but the Kansas Supreme Court held the claim was really one for battery because the blow – though meant for another – was intentionally delivered. The court dismissed Baska's claim because, despite plaintiff's label, it was a battery claim subject to the one-year statute of limitations.

In *Baska,* the Kansas Supreme Court quoted at length from an Ohio decision which held that an officer's intentional touching of a suspect while bringing the suspect under arrest was a battery, not negligence.

> "A similar pleading question was considered by the Ohio Supreme Court in *Love v. Port Clinton,* 37 Ohio St.3d 98, 524 N.E.2d 166 (1988). There, Love was arrested and handcuffed by Hickman, a Port Clinton police officer. Love later sued the city, claiming that Hickman used improper police procedures and injured him. The trial court granted Hickman's motion to dismiss based on the fact that Ohio's 1–year statute of limitations for assault and battery had run. The Ohio Court of Appeals reversed, finding that 'further development of the facts could show that Hickman acted negligently in handcuffing Love. If such could be shown, .. plaintiff should have received the benefit of the two-year statute of limitations for personal injury.' 37 Ohio St.3d at 98, 524 N.E.2d 166.

> The Ohio Supreme Court reversed, holding that 'courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial.' 37 Ohio St.3d at 99, 524 N.E.2d 166 (quoting *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 [1984]). The court found that 'the specific acts of Officer Hickman—'subduing' and 'handcuffing'— are acts of intentional contact which, unless privileged, constitute a battery.' 37

Ohio St.3d at 99, 524 N.E.2d 166. 'Love's complaint against Hickman alleges, in substance, an action in battery and is barred by the one-year statute of limitations.' 37 Ohio St.3d at 100, 524 N.E.2d 166. The court explained:

> 'Where the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence. To hold otherwise would defeat the assault and battery statute of limitations. Nearly any assault and battery can be pled as a claim in negligence.... '[T]hrough clever pleading or by utilizing another theory of law, the assault and battery cannot be [transformed] into another type of action subject to a longer statute of limitations as it would circumvent the statute of limitations for assault and battery to allow that to be done.' 37 Ohio St.3d at 99–100, 524 N.E.2d 166 (quoting *Grimm v. White,* 70 Ohio App.2d 201, 203, 435 N.E.2d 1140 [1980] )." *Baska,* 283 Kan. at 765-66.

*Baska* controls here. Plaintiffs' negligence claims are in substance battery claims which are barred by the one-year statute of limitations.

Kansas courts have rejected analogous efforts to plead false arrest as a negligence claim, and have cited with approval other cases which rejected efforts to press battery claims as claims of negligence. See *Brown v. Kansas,* 261 Kan. 6, 927 P.2d 938 (1996). In *Brown,* the plaintiff alleged that the defendants negligently arrested him. The defendants argued that plaintiff's action was barred by one-year statute of limitations for arrest pursuant to K.S.A. 60–514(b). The plaintiff countered that his claim was subject to the two-year statute of limitations applicable to negligence actions. The court phrased the issue as "whether a cause of action which alleges negligent conduct which results in false arrest and consequent damages ... is a cause of action for negligence or false imprisonment for the purpose of statute of limitations." *Id.* at 9. The *Brown* court held that plaintiff's claims were subject to the one-year statute of limitations. The court reasoned that "because [the plaintiff's] injuries derive from his false arrest and imprisonment, they, rather than the alleged negligence of the officers, are 'the very gist and essence of the plaintiff's cause.'" *Id.* at 15, citing *Duenges v. United States,* 114 F.Supp. 751, 752 (S.D.N.Y. 1953).

In deciding *Brown,* the Kansas Supreme Court relied upon *Baranowski v. Milwaukee,* 235 N.W.2d 279 (Wis. 1975), which determined that an excessive force claim was a claim of battery, not negligence. Baranowski alleged that the negligence of the officers caused intentional acts of arrest and battery for which he sought injuries. The court concluded that despite the plaintiff's characterization of the officers' conduct as negligence, the claim constituted the intentional tort of assault and battery or excessive use of force. *Id.* at 282.

This court has previously recognized that Kansas law does not permit artfully pleading a negligent arrest to avoid the one-year statute of limitations. In *Van Cleave v. City of Marysville,* 2002 WL 31527850 (D. Kan. 2002), the court relied upon *Brown*:

> "Pursuant to the Kansas Supreme Court's holding in *Brown,* this court concludes that the plaintiff's claim, wherein he alleges that his false arrest, false imprisonment, and malicious prosecution were a result of defendant's negligence, is subject to the one-year statute of limitations. Merely because plaintiff has couched his claim as a negligence action does not preclude this court from examining the substance of his claim which is, in reality, a claim for false arrest and malicious prosecution. The conduct that constitutes defendants' alleged negligence is the exact same conduct which constitutes plaintiff's alleged false arrest and malicious prosecution. In other words, plaintiff's claim of damages did not arise from the alleged negligence of defendants Sprouse and Coggins, but rather is the direct consequence of his arrest and prosecution." *Id.* at *3.

This court has also concluded that "negligent excessive force" is not a claim under Kansas law in rejecting a negligence theory against officers who allegedly injured plaintiff by carrying her away as she passively resisted arrest. *Grauerholz v. Adcock,* 2002 WL 226405, *1 and *6 (D.Kan. 2002), *aff'd* 51 Fed.Appx. 298 (10th Cir. 2002) (affirmed on lack of merit of claim without reaching issue whether such a claim was available).

Other courts have also restricted artful pleading to avoid defenses to battery claims. See e.g., *City of Miami v. Sanders,* 672 So.2d 46 (Fla.App. 3 Dist. 1996) (rejecting arrestee's claim for negligent use of force breaking her ankle during an arrest because "[i]f excessive force is used in

an arrest, the ordinarily protected use of force by a police officer is transformed into a battery");
*Sabir v. District of Columbia,* 755 A.2d 449, 452-453 (D.C. Cir. 2000) (no claim for negligent
arrest and use of force because a person could not negligently commit an intentional tort).

Despite *Baska* and other persuasive authorities, this court in *Price* concluded that there
might be such a thing as a cause of action under Kansas law for negligent use of force. The court
relied primarily upon *Dauffenbach v. City of Wichita,* 233 Kan. 1028, 667 P.2d 380 (1983); *Clark
v. Thomas,* 505 F.Supp.2d 884 (D.Kan. 2007); and *Grauerholz v. Adcock,* 51 Fed.Appx. 298 (10th
Cir. 2002). None of these cases support the existence of such a cause of action.

The holding in *Dauffenbach* related to evidentiary presumptions and burdens of proof, not
to recognition of a cause of action in negligence for the use of force. In *Dauffenbach,* the action
accrued on June 7, 1976, when force was used; the original petition was filed April 13, 1978, and
an amended petition was filed which expressly included a claim under 42 U.S.C. § 1983. 233 Kan.
at 1032. The amended petition alleged three counts, one for negligence, one for civil rights
violations under 42 U.S.C. § 1983, and one for negligence against the City of Wichita based on its
failure to train and supervise its police officers. *Id.* The *Dauffenbach* court did not "recognize" a
claim for the negligent use of excessive force when denying the City's cross-appeal regarding the
amended petition.  Rather, the court held the claims asserted in the amended petition were also
asserted in the original petition and, thus, there was no error in allowing the amendment. *Id.*

Further, the heart of the *Dauffenbach* decision was as follows:

"The key question is whether to continue following the preponderance of evidence
standard applied to *negligence **and** tort* actions or adopt, as the trial court did, a
clear and convincing standard in determining whether the police officers breached
a duty. By presuming the officers acted fairly, reasonably and impartially in the
performance of their duty, we have placed the burden on the plaintiff to establish
the use of excessive force by an arresting officer. In addition, the excessiveness of
the force employed is an element of the claim that must be proven by the plaintiff,

rather than a defense of the officer to show the force used was not excessive. The
proper burden of proof in this case is still by a preponderance of the evidence."

(Emphasis added.)  233 Kan. at 1035.  The *Dauffenbach* court was not addressing a negligence
claim, but rather the burden of proof for *any* tort claim.

*Dauffenbach* did not implicitly recognize a cause of action for negligent use of force. The
issue squarely before the *Dauffenbach* court was not whether a negligence claim could be stated.
Rather, the issue was the evidentiary presumptions and burdens of proof.  The defendants urged,
and the Supreme Court rejected, a clear and convincing evidence burden to overcome the
presumption that law enforcement acted reasonably.

In *Clark,* plaintiff asserted state law claims for negligence and battery and a claim under
Section 1983. 505 F.Supp.2d at 887. While the *Clark* decision correctly cited the standards
applicable to the state law claims, by repeating plaintiff's claim labels the court perpetuated the
misnomer label of negligence. *Clark* held only that fact questions precluded summary judgment
under Section 1983 and on the state law claim arising from alleged excessive force. *Clark* did not
purport to address the issue here - that a claim pled as negligent use of force is only a battery claim.

Finally, the Tenth Circuit in *Grauerholz* did not address the viability of a negligent use of
force claim. It specifically avoided the issue. 51 Fed.Appx. at 301 n. 3.

The authorities relied upon by the court in *Price* do not outweigh the Kansas state court
precedent in *Baska*. Defendants respectfully ask this court to follow the Kansas Supreme Court's
lead in *Baska* to conclude that Kansas does not recognize a cause of action for negligent use of
force.

## C. If the cause of action exists, defendants are entitled to discretionary function immunity.

A government entity may be liable for damages caused by the negligent act of an employee acting within the scope of employment only where the governmental entity, if a private person, would be liable under state law. See K.S.A. 75-6103(a). Thus, the threshold question in any negligence action against a government entity or its employees is whether a duty was owed to plaintiff and the nature of the duty. See *Adams v. Board of Sedgwick County Com'rs,* 289 Kan. 577, 579, 585-86, 214 P.3d 1173 (2009); *Hessler v. Osawatomie State Hosp.,* 266 Kan. 616, 622, 971 P.2d 1169 (1999). As set forth in Sections II(A) and (B), above, plaintiffs did not plead or prove a negligence cause of action.

Even if plaintiffs had pled a viable negligence claim, defendants are entitled to immunity from liability under K.S.A. 75-6104(e). A governmental entity or an employee acting within the scope of employment shall not be liable for damages resulting from "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 75-6104(e).

The term discretionary function or duty is not defined in the KTCA. To determine whether the function or duty is discretionary, Kansas courts look to the nature and quality of the discretion exercised. *Bolyard v. Kansas Dept. of SRS,* 259 Kan. 447, 452, 912 P.2d 729 (1996); *Robertson v. City of Topeka,* 231 Kan. 358, 361–62, 644 P.2d 458 (1982). A discretionary function is one for which there is no hard and fast rule or clearly defined guideline regarding the course of conduct the person or entity must take. *Lynn v. Simmons,* 32 Kan.App.2d 974, 980, 95 P.3d 99 (2003); *Jackson v. U.S.D. No. 259,* 26 Kan.App.2d 111, 115-16, 979 P.2d 151, *rev'd on other grounds* 268 Kan. 319, 995 P.2d 844 (1999). Whether a function is discretionary depends on the totality of the circumstances. *Carpenter v. Johnson,* 231 Kan. 783, 789, 649 P.2d 400 (1982).

It is difficult to apply discretionary function immunity to the alleged acts of Officer Henry because they are not negligent acts – they are intentional acts. But if plaintiffs insist that there is negligence in deciding to subdue a person in the course of arresting him or her, then defendants are entitled to discretionary immunity because the decision is discretionary – not to mention privileged under K.S.A. 21-5227(a). For all of these reasons, the negligent use of force claims fail as a matter of law.

### III.    Both plaintiffs' state law claims for intentional infliction of emotional distress fail.

The elements of a state law claim for intentional infliction of emotional distress ("IIED") are described by the Kansas courts as follows:

> "The tort of outrage is also known as intentional infliction of emotional distress. *Hallam v. Mercy Health Center of Manhattan, Inc.,* 278 Kan. 339, 340, 97 P.3d 492 (2004). To establish the tort of outrage, a plaintiff must present evidence which establishes that the defendant committed intentional or reckless conduct which was so extreme and outrageous as to be regarded as utterly atrocious or intolerable in a civilized society and which caused the plaintiff extreme and severe mental distress. See *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman,* 267 Kan. 245, 257, 978 P.2d 922 (1999); *Smith v. Welch,* 265 Kan. 868, 876, 967 P.2d 727 (1998); PIK Civ. 4th 127.70.
>
> Before submitting a claim of outrage to a jury, the district court must make a threshold determination that (1) the defendant's conduct may be regarded as sufficiently extreme and outrageous to permit recovery under the law and that (2) the plaintiff's mental distress was of such a nature that no reasonable person should have been expected to endure it under the circumstances. See *Smith,* 265 Kan. at 876, 967 P.2d 727." *Lovitt ex rel. Bahr v. Board of County Com'rs of Shawnee County,* 43 Kan.App.2 4, 13, 221 P.3d 107 (2009).

Kansas courts refer to these requirements as "rather stringent." *Ely v. Hitchcock,* 30 Kan.App.2d 1276, 1288, 58 P.3d 116 (2002). The threshold requirements for outrage causes of action are "necessarily high to separate meritorious claims from those based on trivialities or hyperbole." *Rupp v. Purolator Courier Corp.,* 790 F.Supp. 1069, 1073 (D.Kan. 1992).

### A. Mary's claim.

Mary asserts that she was humiliated and emotionally upset by the fact that Officer Henry knocked her down, fell on top of her, arrested her, and told her to shut up and quit crying. She also complains because he told another officer that Mary battered him, and because she was arrested and booked in her nightclothes. She said after the incident she suffered nightmares and became more depressed, though she testified that she was depressed and taking medication for her depression before the incident. Mary said she became paranoid and anxious after the incident.

First, Mary's IIED claim is simply an amalgam of otherwise time-barred state tort claims. As set forth above in Section II, despite the label attached, the IIED claim is really one for battery, false arrest and/or malicious prosecution under state law. The claim's essence is found in the factual allegations, which involve the intentional application of force by Officer Henry in knocking her down, arresting her, and causing her to be prosecuted. (First Amended Complaint, doc.#10, ¶69, 71, 76-79; Pretrial Order, doc.#74, ¶3(a), p. 6-7). "A battery is the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive." PIK Civ.4th 127.02. "False arrest is the restraint of the personal freedom of an individual without legal excuse . . . ." PIK Civ.4th 127.20. "To maintain an action for malicious prosecution the plaintiff must prove that the defendant instituted the proceeding of which complaint is made, that the defendant in so doing acted without probable cause and with malice, and that the proceeding terminated in favor of the plaintiff." PIK Civ.4th 127.30. The facts alleged more closely match the elements of battery, false arrest and malicious prosecution.

But all of these claims have a one-year statute of limitations and would be untimely if asserted. See K.S.A. 60-514(b). Mary combines them and casts them as an IIED claim in an

attempt to take advantage of its two-year statute of limitations. See K.S.A. 60-513(a)(4). This is not permitted under Kansas law. See *Malone v. University of Kansas Medical Center,* 220 Kan. 371, 376, 552 P.2d 885 (1976); *Travis v. Bishoff,* 143 Kan. 283, 284-85, 54 P.2d 955 (1936); *Bonin v. Vannaman,* 261 Kan. 199, 210-11, 929 P.2d 754 (1996) (medical malpractice action cannot be recast as action in fraud); *Jeanes v. Bank of America, N.A.,* 40 Kan.App.2d 281, 191 P.3d 325 (2008) (contract claim cannot be construed as a tort claim and vice versa, whether claim sounds in tort or contract is determined from the substance of the facts alleged); *Meyer Land & Cattle Co. v. Lincoln County Conservation Dist.,* 29 Kan.App.2d 746, 31 P.3d 970 (2001) (defamation claim subject to the one-year statute of limitations cannot be framed as a tortious interference with contract claim subject to the two-year limitations).

Even assuming Mary has correctly labeled her claim and assuming her version of events is true, Officer Henry's conduct was not sufficiently extreme or outrageous to support an IIED claim. Mary knew Antron was wanted on a felony warrant and encouraged Martinez to call 911 when Travis and Antron would not stop fighting. When police arrived, Mary approached Antron as officers attempted to subdue him and was shouting at the officers to let him go. The fact that Mary was knocked down by an officer in an effort to keep her back, and that he fell on top of her, is not an unexpected occurrence given the number of people and officers at the scene and the fact that Mary was shouting at officers who were trying to arrest her son. If Officer Henry told Mary to shut up and quit crying, or made other similar comments, these do not rise to the level of outrageous conduct. Rude, insulting, inappropriate or even threatening comments will not suffice. See, e.g., *Beam v. Concord Hospitality, Inc.,* 873 F.Supp. 491, 502 (D.Kan.1994).

Further, Mary's emotional distress – at most anxiety and depression - was not sufficiently severe. Fright, concern, embarrassment, worry, and nervousness do not constitute sufficient harm

to a plaintiff to warrant the award of damages for outrage. See *Roberts v. Saylor,* 230 Kan. 289, 296, 637 P.2d 1175 (1981); *Vetter v. Morgan,* 22 Kan.App.2d 1, 4, 913 P.2d 1200, *rev. denied* 257 Kan. 1096 (1995). Indeed, "'headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like'" do not suffice. *Valadez v. Emmis Communications,* 290 Kan. 472, 479, 229 P.3d 389 (2010), quoting Boston, Kline, & Brown, Emotional Injuries: Law and Practice § 22:7 (1998). For these reasons, Mary's IIED claim fails as a matter of law.

### B. Travis'claim.

Travis asserts that he was emotionally damaged by the fact that he saw his mother tackled by a police officer, he was tased in the back, arrested, and he was subjected to a derogatory comment about his college education. He also complains because he was physically subdued at the police station and was prosecuted, though he eventually pled no contest to a lesser crime. (First Amended Complaint, doc.#10, ¶70, 72, 80-83; Pretrial Order, doc.#74, ¶3(a), p. 6-7). Travis does not complain of depression or anxiety. At most he testified that he is somewhat self-conscious when someone asks about the taser marks on his back and he reveals he has been tased.

Again, Travis' IIED claim is an attempt to avoid the statute of limitations for what is really a battery claim. Travis' fact allegations center on the fact that he was tased. No matter the label, this is a battery claim with a one-year statute of limitations. It is time-barred.

Further, Officer Henry's conduct was not sufficiently extreme or outrageous to support an IIED claim. A police officer's use of a taser to subdue a threat to officer safety or obtain compliance with officer commands does not necessarily amount to extreme and outrageous behavior. See, e.g., *Wright v. Deghetto,* 2008 WL 199890, *8 (W.D.Ky. 2008) (no evidence from which a jury could infer that officer's actions were motivated solely by a desire to cause plaintiff emotional distress). If one of the officers made a derogatory remark about Travis' associate's degree, this is the type

of comment that does not amount to extreme or outrageous behavior as a matter of law. *See, e.g.,*
*Metzger v. Compass Group USA, Inc.,* 1999 WL 714116, *4 (D.Kan. 1999) (remarks that are
"inappropriate, inconsiderate, and unkind" do not support a claim for IIED).

Even if Travis could demonstrate extreme or outrageous behavior, there is no evidence that
he suffered severe emotional distress. His failure to seek professional help for his emotional
distress "cuts heavily against" its existence. *Id.* He simply presents no evidence of it. For these
reasons, his IIED claim fails as a matter of law.

### IV.     The City of Wichita cannot be held liable for plaintiffs' federal claims.

In the First Amended Complaint (doc.#10), Mary and Travis brought only one federal
claim directly against the City of Wichita – failure to train its officers on the use of a Taser. This
claim was abandoned in the Pretrial Order. (Doc.#74, ¶4(a), p. 12) They also sought to impose
liability on the City for the state law claims pursuant to *respondeat superior* and the Kansas Tort
Claims Act. In the Pretrial Order, plaintiffs purport to impose liability on the City for all of the
remaining federal claims through the following statement: "The City of Wichita is financially
liable pursuant to K.S.A. 75-6116 for civil rights violations Defendant Henry causes in the course
of his employment." (Doc.#74, ¶4(a), pp. 9-11)

"[A] municipality cannot be held liable solely because it employs a tortfeasor - or, in other
words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell
v. Dep't of Social Serv.,* 436 U.S. 658, 691 (1978). It may only be held liable under Section 1983
"for its own unconstitutional or illegal policies." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th
Cir. 1998). Thus, "a municipality is liable only when the official policy [or unofficial custom] is
the moving force behind the injury alleged." *Id.*, quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v.
Brown,* 520 U.S. 397, 404 (1997) (internal quotation marks omitted). A plaintiff must identify the

government's policy or custom that caused the injury and show "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dept.,* 717 F.3d 760, 769 (10th Cir. 2013). The elements of *Monell* liability were not pled in the First Amended Complaint, were not included in the Pretrial Order, and there is no evidence to support them in the record.

K.S.A. 75-6116 states in pertinent part:

"(a) If an employee of a governmental entity is or could be subject to personal civil liability on account of a noncriminal act or omission which is within the scope of the employee's employment and which allegedly violates the civil rights laws of the United States or of the state of Kansas, the governmental entity:

(1) Shall provide for the defense of any civil action or proceeding which arises out of the act or omission and which is brought against the employee in the employee's official or individual capacity, or both, to the extent and under the conditions and limitations provided by K.S.A. 75-6108 and amendments thereto for the defense of actions and proceedings under the Kansas tort claims act; and

(2) may reimburse the employee attorney fees, costs and expenses incurred in defending a claim for punitive or exemplary damages in such action or proceeding to the extent and under the conditions and limitations provided by K.S.A. 75-6108 and amendments thereto for reimbursement of such fees, costs and expenses incurred in defending a claim for punitive or exemplary damages under the Kansas tort claims act.

(b) The governmental entity, subject to any procedural requirements imposed by statute, ordinance, resolution or written policy, shall pay or cause to be paid any judgment or settlement of the claim or suit, including any award of attorney fees, and all costs and fees incurred by the employee in defense thereof if:

(1) The governmental entity finds that the employee reasonably cooperated in good faith in the defense of the action or proceeding;

(2) the trier of fact finds that the action or proceeding arose out of an act or omission in the scope of the employee's employment; and

(3) the trier of fact does not find that the employee acted or failed to act because of actual fraud or actual malice.

. . .

(e) A municipality may pay for the cost of providing defense, judgments and other costs involving actions for alleged civil rights violations in the same manner as that provided in the Kansas tort claims act."

K.S.A. 75-6116 does not impose direct liability on the City of Wichita for the torts of its employees, nor is it a mechanism for the City to assume direct liability. Rather, "such statutes are merely attempts by the state to protect its employees and ensure that meritorious claims are paid." *Barger v. State of Kansas,* 620 F.Supp. 1432, 1437 (D.Kan. 1985).

To the extent plaintiffs purport to impose liability on the City for all of the remaining federal claims through K.S.A. 75-6116, the effort must be rejected and the City dismissed as a party to these claims.

## CONCLUSION

For the reasons set forth above, defendants are entitled to summary judgment on Mary's malicious prosecution claim, and both plaintiffs' state law claims for negligent use of force and IIED. These claims should be dismissed, leaving only Mary and Travis' excessive force claims and Mary's false arrest claim for trial.

Respectfully submitted,

GARY E. REBENSTORF
City Attorney
SHARON L. DICKGRAFE #14071
Chief Deputy City Attorney
City Hall-13th Floor
455 North Main
Wichita, KS 67202
(316) 268-4681
FAX: (316) 268-4335
Email: *GRebenstorf@wichita.gov*

and


/s/J.Steven Pigg
J. Steven Pigg         #09213
Attorney for Defendants
FISHER, PATTERSON, SAYLER & SMITH, L.L.P.
3550 S.W. 5th Street
P. O. Box 949
Topeka, KS 66601-0949
Phone number: (785) 232-7761
Fax number: (785) 232-6604
Attorney's E-mail address: spigg@fisherpatterson.com


## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2013, I electronically filed the foregoing with the

clerk of the court by using the CM/ECF system which will send a notice of electronic filing to

the following:

James A. Thompson #21263
Klenda Austerman LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
(316) 267-0331
*jthompson@klendalaw.com*
*Attorney for plaintiffs*

Aaron J. Good #25067
Klenda Austerman LLC
301 N. Main, Ste. 1600
Wichita, KS 67202-4816
(316) 267-0331
*agood@klendalaw.com*
*Attorney for plaintiffs*

I further certify that I mailed the foregoing document and the notice of electronic filing

by first-class mail to the following non-CM/ECF participants: No one.

/s/ J. Steven Pigg
J. Steven Pigg        #09213
Attorney for Defendants
FISHER, PATTERSON, SAYLER & SMITH, L.L.P.
3550 S.W. 5th Street
P. O. Box 949
Topeka, KS  66601-0949
Phone number:  (785) 232-7761
Fax number: (785) 232-6604
Attorney's E-mail address:  spigg@fisherpatterson.com

{T0424978}